[1] Reported in 183 P.2d 802.
This cause comes before the court upon certiorari to review a decree of public use and necessity made and entered on October 5, 1946, by the superior court for Clark county.
The decree was entered in eminent domain proceedings instituted by public utility district No. 1 of Clark county (hereinafter referred to as District), as petitioner, against Northwestern Electric Company, a corporation (hereinafter referred to as Northwestern), Harris Trust and Savings Bank, a corporation, Harold Eckhart, Pacific Power Light Company, a corporation (hereinafter referred to as Pacific), Chemical Bank Trust Company, a corporation, and Howard B. Smith, respondents, for the purpose of acquiring the electric system operated by Northwestern in Clark county, together with certain extensions thereof extending into Cowlitz and Skamania counties.
The District was established under the provisions of Laws of 1931, chapter 1, p. 3, with boundaries coextensive with the limits of Clark county.
On December 14, 1944, the commissioners of the District adopted a certain plan or system resolution for the establishment of a public utility by the acquisition, either by purchase or condemnation, of the franchises and all the electrical works, plants, and facilities owned by the Portland General Electric Company, located in Clark county; *Page 479 
also all franchises and electrical works, plants, and facilities of Northwestern, used or useful for the transmission and distribution of electricity, which are located in Clark county, together with certain portions thereof connected therewith extending into Skamania county; and all franchises, electrical works, plants, and facilities owned by Pacific, used or useful for the transmission and distribution of electricity, which are located in Clark county, together with certain portions thereof connected therewith extending into Skamania and Cowlitz counties.
The above resolution was adopted as resolution No. 86 and was introduced in evidence as petitioner's exhibit No. 3. It was adopted pursuant to the provisions of Rem. Supp. 1941, § 11611-1 [P.P.C. § 833-25], as the official system or plan, and it sets out in detail the properties to be acquired and declares the necessity and use of their acquisition as follows:
"Section 1. The public interest, welfare, convenience and necessity require the establishment by the District of a public utility for the purpose of furnishing the District and the inhabitants thereof, and any other persons, including public and private corporations, within or without its limits, with electric current for all public uses."
By resolution No. 87 (petitioner's exhibit No. 4), passed by the commissioners of the District on November 21, 1945, the commissioners authorized the institution of an action or actions to acquire, by condemnation, the properties hereinbefore referred to.
Subsequent to the adoption of resolution No. 86, and prior to the hearing upon and entry of the decree of public use and necessity, and on January 11, 1946, the District acquired the properties of the Portland General Electric Company. The system of this company which was acquired by the District serves an area within the city of Vancouver only. The system of Northwestern, as operated, serves all of Clark county, including the area within the city of Vancouver. All of the properties of Pacific being here condemned are leased to Northwestern and are operated by the latter company in conjunction with property *Page 480 
owned by it, as a single integrated system. Condemnation was sought against the properties of Northwestern and Pacific as an integrated system, and it is stated in the petition:
"The District will not take the properties of either company herein unless it also takes herein the properties of the other."
The portion of the system of Northwestern which is here sought to be acquired includes, in addition to its facilities in the city of Vancouver, transmission lines interconnecting the substations at Camas, Vancouver, and West Vancouver, substations at Camas and Washougal, and related distribution facilities serving the cities of Camas and Washougal and a rural area extending for several miles along the Columbia river.
The part of the system of Pacific which is here sought to be acquired is, as stated, that held and operated by Northwestern under lease, and serves the incorporated towns of Ridgfield, LaCenter, Yacolt, and several unincorporated communities, such as Battle Ground and Amboy.
The system of Pacific is principally a distribution system and, in addition to serving the towns and community last above mentioned, serves practically all of Clark county not served by Northwestern.
Section 6 of the plan or system resolution states:
"The acquisition of the works, plants and facilities aforesaid for the purposes hereinabove provided is and is hereby declared to be a public necessity and is for a public use."
There is no evidence in this case that any private use of the properties to be acquired is contemplated.
The contention of Northwestern and its objection to the entry of the order of public use and necessity relate to the fact that that portion of the system of Northwestern within the city of Vancouver to be acquired, and the properties of the District now being operated within the city of Vancouver, being the properties acquired from the Portland General Electric Company, are in all respects duplicating systems; that, generally speaking, the inhabitants of Vancouver *Page 481 
can be served from either of these systems, so that the customers and inhabitants on Northwestern's distribution system can be served from the lines already owned and operated by the District; hence, there is in reality no necessity for the District acquiring the system of Northwestern within the limits of Vancouver.
George A. Drewett, division engineer for Northwestern, was called and testified in part as follows:
"Q. Now, Mr. Drewett, generally speaking, does the Public Utility District No. 1 and Northwestern Electric Company render competitive electric utility service to the City of Vancouver and its inhabitants at the present time? A. Generally speaking, yes. Q. And generally speaking, do they have duplicating electric distribution systems in the City of Vancouver? A. Yes."
This witness, after referring to a map (exhibit No. 8) and pointing out thereon the lines operated by the District and those operated by Northwestern within the city of Vancouver, was asked the following question:
"Q. All voltages and classifications of distribution line. Can the inhabitants of Vancouver be served by either of those systems? A. Well, generally speaking, they can."
The witness admitted that there were a few isolated spots served by Northwestern and not by the system operated by the District.
No attempt was made by Northwestern to show that it would be practicable to separate the portions of its system within the city of Vancouver from the remaining portions in Clark county.
Relative to the franchise held by Northwestern, the plan or system resolution provides for the acquisition of:
"(d) Franchises: All franchises, certificates and publicly granted rights owned by said company and necessary for the operation of the electrical system in Clark and Skamania Counties."
Exhibit No. 10 is a certified copy of ordinance No. 1115, passed by the city of Vancouver in 1921, which granted to Northwestern a franchise for a period of fifty years, in *Page 482 
consideration of which Northwestern was to pay to the city the sum of seventy-five dollars per month.
Exhibit No. 9 is a copy of ordinance No. 1191, passed by the city of Vancouver in 1923, wherein it granted to Portland Railway, Light and Power Company, predecessor in interest of Portland General Electric Company, a franchise for the period of fifty years. When the District acquired the properties of the Portland General Electric Company, it acquired this franchise. The above ordinance expressly granted such franchise to Portland Railway, Light and Power Company, its successors and assigns. By § 3, the ordinance gave to the city council the right to demand that plans and appropriate maps of all work or proposed extensions, including relocations and changes, should be filed with the city engineer and approved by the city before any work was done or changes made.
Northwestern makes the following assignments of error: (1) The court erred in entering the decree of public use and necessity; (2) in including in the property covered by the decree the franchise granted by the city of Vancouver to Northwestern; (3) in including in the property covered by the decree the electric distribution system of Northwestern within the city of Vancouver; and (4) in failing to dismiss the action.
Northwestern's contentions that the decree of public use and necessity was erroneously entered are summarized in its brief as follows:
"(1) That the proposed acquisition of the company's Vancouver franchise is not for public use and that there is no public necessity for its taking; (2) That the proposed acquisition of the company's distribution system in the City of Vancouver is not for a `higher' public use than that to which it is now devoted and there is no public necessity for its taking; (3) That the taking of the franchise and distribution system will result in the District acquiring an exclusive privilege and establishing for itself a monopoly, contrary to the Washington constitution; (4) That if any part of the property sought to be acquired cannot be taken, then the proceeding must be dismissed." *Page 483 
The first two of the above contentions are argued together, and we shall so consider them.
It is contended by Northwestern that the questions of public use and public necessity are separate and distinct questions, and that under Art. I, § 16, of our constitution, as amended by amendment 9, the question of public use is wholly a judicial one.
It must be admitted that the District, upon acquiring the properties of Northwestern, will use them to furnish electricity to the District, the inhabitants thereof, and other persons, within or without its limits, for all purposes.
The material part of amendment 9 to our constitution provides:
"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public: . . ."
[1] By the action of the superior court, there has been a judicial determination that the use for which this property is to be taken is a public use.
[2] We have uniformly held that the acquisition of properties by a public utility district, for the purpose of furnishing electricity to the public, is a public use. In connection with this question, we stated, in State ex rel. Washington WaterPower Co. v. Superior Court, 8 Wn.2d 122, 132-133,111 P.2d 577:
"In connection with the question of whether or not these franchises were sought for a public use, our attention has been called to the provisions of amendment IX of our state constitution, in which we find that,
"`Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public.'
"The very nature of the business of furnishing electric energydetermines that the use to which the condemned property is to beput is a public one. Under our present way of living, electricity is essentially necessary in order *Page 484 
to enable our citizens to carry on their every day activities and pursue their accustomed manner of living. [Citing cases.]" (Italics ours.)
In Carstens v. Public Utility Dist. No. 1, 8 Wn.2d 136,143, 111 P.2d 583, we stated:
"The generation and distribution of electric power has long been recognized as a public use by this court. State ex rel.Washington Water Power Co. v. Superior Court, 8 Wn.2d 122,111 P.2d 577."
In the instant case, we are of the opinion the trial court could not have done other than find that the use for which the property is to be acquired is a public use.
[3] Is the use for which this property is to be acquired a higher public use than that to which it is devoted?
In discussing this question of higher public use, we stated inState ex rel. Washington Water Power Co. v. Superior Court,supra, at pp. 131-132:
"A municipal corporation may be given the right by the legislature to condemn and take the property of a privately owned public utility corporation already devoted to the same public use, for the reason that the use of the public utility by a municipal corporation is larger in scope and of more generalbenefit to the public. Tacoma v. Nisqually Power Co., 57 Wn. 420,107 P. 199; State ex rel. Peabody v. Superior Court,77 Wn. 593, 138 P. 277; State ex rel. Willapa Electric Co. v.Superior Court, 196 Wn. 523, 83 P.2d 742." (Italics ours.)
The only theory upon which condemnation of certain properties of the Washington Water Power Company could have been sanctioned by this court in the cited case, was that the use to which they would be devoted by the district was a higher public use than that to which they were put by the Washington Water Power Company. That is the basis upon which all the decisions which permit a municipal corporation to acquire the properties of a private corporation which are already being put to a public use are founded. There can be no question, from the above decisions, that we have applied this principle to public utility districts, as well as to other municipal corporations. *Page 485 
Was the trial court justified in concluding that there is a public necessity for the acquisition of the properties, facilities, and franchises of Northwestern by the District?
Northwestern stresses the fact that in this case the District now owns and operates a system in the city of Vancouver capable of furnishing the inhabitants of the city with electricity. It also, in referring to the case of Tacoma v. Nisqually PowerCo., 57 Wn. 420, 107 P. 199, seems to argue and infer that cities are vested with broader powers, at least in so far as the acquisition of the properties of a private corporation are concerned, than is a public utility district. This court has certainly never made any such distinction but, to the contrary, has specifically referred to and cited the Tacoma case and others, supra, in support of the conclusion that the use to which the property was to be put by the public utility district was a higher public use.
In the instant case, it should be kept in mind that the District is condemning the properties of Northwestern, both within and without the city of Vancouver, and the properties of Pacific leased by Northwestern, as an integrated system. However, we think the question of public necessity has been conclusively settled in this case by the action of the District commissioners. Section 1, of resolution No. 86, states:
"The public interest, welfare, convenience and necessity require the establishment by the District of a public utility for the purpose of furnishing the District and the inhabitants thereof, and any other persons, including public and private corporations, within or without its limits, with electric current for all public uses."
Northwestern states on p. 19 of its brief:
"With respect to the question of public necessity, the issue is not exclusively a judicial one, as is the case with respect to public use. The commission of the District having found the taking of these properties to be necessary, the question before the court is whether this finding was arbitrary, capricious, or fraudulent." *Page 486 
 [4] In State ex rel. Washington Water Power Co. v. SuperiorCourt, supra, we announced the rule applicable to public utility districts relative to a determination of the question of public necessity, and therein stated:
"The question of the necessity for the taking of relator's property was for the determination of the district commissioners, and with that determination we can have no concern unless it be shown that the commissioners were guilty of fraud or acted arbitrarily and capriciously."
In the instant case, there was no attempt to show that the commissioners acted arbitrarily and capriciously, or fraudulently, and there is nothing in the record upon which such a contention could be made, other than the fact, that, in seeking to condemn the entire system of Northwestern, they included its properties and facilities within the city of Vancouver, where the District was also operating.
Again, in Carstens v. Public Utility Dist. No. 1, supra, we stated:
"As for the matter of the necessity of condemning this property, it is the rule that a municipal corporation'sdetermination of necessity in these cases is conclusive upon the courts in the absence of fraudulent, arbitrary, or capricious action by the condemnor. State ex rel. Washington Water PowerCo. v. Superior Court, 8 Wn.2d 122, 111 P.2d 577.
"We are unable to find any evidence in the record to support a conclusion that any action of the enumerated types is present in the case at bar." (Italics ours.)
Likewise, in the instant case, we have been unable to find any evidence which would support a conclusion that the commissioners of the District acted arbitrarily and capriciously, or fraudulently.
[5] We desire to again call attention to the fact that this court made no distinction between the powers granted to cities and those granted to public utility districts, in the determination of the question of public necessity. In other words, the fact that cities may or may not have more truly government functions than a public utility district, was not considered of sufficient importance to make any *Page 487 
distinction between their power to acquire the property of a private corporation already devoted to a public use and the powers expressly granted to public utility districts, which are expressly declared by the statute to be municipal corporations.
[6] It is next contended by Northwestern that no necessity was shown for acquiring its franchise to operate within the city of Vancouver.
What we have said relative to the other contentions of Northwestern applies to the franchise. In Washington Water PowerCo. v. Superior Court, supra, we stated:
"The right of the districts to secure the franchises of relators by eminent domain proceedings under ordinary circumstances, cannot well be questioned. The act specifically gives the districts that right, which conforms to the provisions of Art. XII, § 10, of our state constitution, reading:
"`The exercise of the right of eminent domain shall never be so abridged or construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use the same as the property of individuals."
[7, 8] The basic reason for acquiring the franchise of Northwestern granted by the city of Vancouver is that the franchise now held by the District to operate within the city of Vancouver does not cover the property of Northwestern herein sought to be condemned or its operation within the city, but only covers and applies to the system acquired in January, 1946, from the Portland General Electric Company. The District could not operate the properties of Northwestern within the city of Vancouver without a franchise.
It certainly does not follow that the District, under the franchise it now holds, could serve all the inhabitants of Vancouver, for under its franchise it can make no extensions or changes in its system without first submitting plans to the city and procuring its approval thereof. If the District serves all the people, it will surely be necessary for it to construct additional distribution lines to serve the *Page 488 
people now being served by Northwestern, unless it can use the facilities of Northwestern now in place and being used by that company.
While it is true that the franchise now held by the District does not describe in detail the properties covered thereby, or their location upon the streets of the city, we are satisfied that the description and location of the property became fixed and certain when the system of Portland General Electric Company was actually constructed and located pursuant to the franchise.
"The right to occupy streets is a franchise; the actual occupation of them in that way pursuant to the franchise is the exercise of an easement." 23 Am. Jur. 716, § 3.
The principle above announced, relative to the location and description of the property becoming fixed and certain by construction and location, has been long recognized by the courts of this country. We quote from the early Massachusetts case ofJennison v. Walker, 11 Gray 423, 426:
"Where an easement in land is granted in general terms, without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantee does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. When the right granted has been once exercised in a fixed and defined course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee."
The above principle was recognized by this court in Rhoades v.Barnes, 54 Wn. 145, 149, 102 P. 884, wherein, after quoting from Jennison v. Walker, supra, we stated:
"To the same effect is Onthank v. Lake Shore etc. R. Co.,71 N.Y. 94, 27 Am. Rep. 35, where, in a grant to lay water pipe across grantor's lands without specifying the place or size of the pipe, it was held that, `after the grantee had once laid its pipe and thus selected the place where it would exercise its easement thus granted in general terms, what was before indefinite and general became fixed and certain,' and this both as to the location and size of the pipe." *Page 489 
As hereinbefore stated, we are satisfied that the District, under the franchise it now holds, would have no authority to maintain or operate the property of Northwestern in the city of Vancouver, but it must acquire the franchise of Northwestern in order to maintain and operate its properties in the city.
The last contention of Northwestern is to the effect that, if the District may condemn its property and franchise in the city of Vancouver, it may condemn any and every other electric distribution property which may be built in the city of Vancouver, thus arrogating unto itself a monopoly of the electric utility business in the city, which is contrary to Art. I, § 12, and Art. XII, § 22, of our state constitution.
[9] Art. I, § 12, provides:
"No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." (Italics ours.)
Public utility districts being expressly declared by the statute to be municipal corporations, it seems apparent that the constitutional provision just quoted has no application here.
Art. XII, § 22, provides:
"Monopolies and trusts shall never be allowed in this state, and no incorporated company, copartnership, or association of persons in this state shall directly or indirectly combine or make any contract with any other incorporated company, foreign or domestic, through their stockholders, or the trustees, or assignees of such stockholders, or with any copartnership or association of persons, or in any manner whatever, for the purpose of fixing the price or limiting the production or regulating the transportation of any product or commodity. The legislature shall pass laws for the enforcement of this section by adequate penalties, and in case of incorporated companies, if necessary for that purpose, may declare a forfeiture of their franchise."
We think it apparent that the District is not acquiring the franchise and properties of Northwestern for the purpose of "fixing the price or limiting the production or *Page 490 
regulating the transportation of any product or commodity."
The title of Art. XII is "Corporations Other Than Municipal."
[10] Northwestern quotes from State ex rel. Bremerton BridgeCo. v. Superior Court, 194 Wn. 7, 19, 76 P.2d 990, as follows:
"Eminent domain statutes, being in derogation of the common right, must be strictly construed, both as to the extent of the power and as to the manner of its exercise."
Northwestern seems to overlook the provisions of the public utility district act, which provides:
"The rule of strict construction shall have no application to this act, but the same shall be liberally construed, in order to carry out the purposes and objects for which this act is intended.
"When this act comes in conflict with any provision, limitation or restriction in any other law, this act shall govern and control." Rem. Rev. Stat., § 11615 [P.P.C. § 833-21].
The above rules have been approved in the following condemnation cases, among others: Carstens v. Public UtilityDist. No. 1, supra; State ex rel. Washington Water Power Co. v.Superior Court, supra; and Rumbolz v. Public Utility Dist. No.1, 22 Wn.2d 724, 157 P.2d 927.
[11] Northwestern attempts to escape the effect of the plain language of Art. XII, § 22, by stating that:
"In the attempted acquisition of the property here sought, the District is exercising a proprietary, as distinguished from a governmental, function."
Northwestern's argument seems to be that, regardless of the express declaration in the statute, a public utility district is not in fact a municipal corporation, but at most only a quasi-municipal corporation, and that being true, public utility districts are not exempted from the provisions of Art. XII, § 22, of the constitution.
The fact that a municipal corporation is expressly granted certain powers, the exercise of some of such powers being in a proprietary capacity, certainly does not warrant the *Page 491 
conclusion that, in the exercise of such proprietary functions, it is not acting as a municipal corporation. We have certainly placed no limitation upon the powers granted to public utility districts upon the theory that they were not in fact municipal corporations, as is apparent from the cases hereinbefore cited.
We held, in Uhden, Inc. v. Greenough, 181 Wn. 412,43 P.2d 983, 98 A.L.R. 1181, and Griffiths v. Robinson, 181 Wn. 438,43 P.2d 977, that Art. XII, § 22, was not applicable to the state.
[12] We have specially held, as hereinbefore indicated, that public utility districts are municipal corporations. We placed no limitation upon the term "municipal corporation." Public utility districts, as such municipal corporations, are subdivisions of the state and, in our opinion, would not be subject to the provisions of Art. XII, § 22.
Furthermore, it is expressly provided by Rem. Rev. Stat., § 11610 [P.P.C. § 833-11], subd. (b), that the right of eminent domain
". . . shall be exercised and instituted pursuant to resolution of the commission and conducted in the same manner and by the same procedure as is or may be provided by law for the exercise of the power of eminent domain by incorporated cities and towns of the State of Washington in the acquisition of like property and property rights."
[13] If the elimination of private competition constitutes monopoly, which we do not admit, we are of the opinion the case of Puget Sound Power Light Co. v. Public Utility Dist. No. 1,123 F.2d 286, 290, holds in effect that a public utility district, organized under the laws of the state of Washington, has the right to monopolize the business of furnishing electricity to the district, for clearly that would have been the effect of the acquisition of the properties of Puget Sound Power Light Co. in the cited case. The court in that case, after quoting from State ex rel. Washington Water Power Co. v.Superior Court, 8 Wn.2d 122, 111 P.2d 577, and referring to Carstens v. Public Utility Dist. No. 1, supra, stated: *Page 492 
"The company [Puget Sound] argues that the action of appellee was arbitrary because it was unnecessary to take the properties since other competing lines could be built. The argument, however, ignores the fact that it could reasonably be concluded that it was necessary to take existing properties, thus avoiding competition, rather than to build new lines and be faced with competition. We think a reasonable man could take that view, and that therefore the decision of appellee's commissioners is not arbitrary."
In the case of West Texas Utilities Co. v. Spur,38 F.2d 466, 469, the court made the following statement relative to the question here being considered:
"Unless forbidden by statute, an authorized acquisition and operation by a municipality of such a public utility as an electric light plant may be accompanied by a purpose to prevent competition by another owner of such a utility. . . . We have not been referred to any statute which makes it unlawful for a municipality to acquire the exclusive right to own and operate such a public utility for the benefit of its inhabitants."
May we say in passing that the conclusions we have reached herein in no way conflict with the decision reached in the case of State ex rel. Public Utility Dist. No. 1 of Skagit County v.Wylie, ante p. 113, 182 P.2d 706.
[14] We are of the opinion that the decree of public use and necessity entered by the trial court was justified by the facts and the law applicable thereto, and that the judgment of the trial court should be, and it is, hereby affirmed.
MALLERY, C.J., MILLARD, STEINERT, ROBINSON, SIMPSON, ABEL, and HILL, JJ., concur. *Page 493