[No. 3173.  Decided February 7, 1899.]

ROBERT MORAN, *Respondent*, v. R. H. THOMPSON, *as City Engineer of the City of Seattle, et al., Appellants.*

MUNICIPAL CORPORATIONS—CONTRACTS FOR PUBLIC WORKS—BIDS—
PROVINCE OF BOARD OF PUBLIC WORKS—LOAN OF CITY CREDIT.

Under a provision of a city charter requiring all local improvements, the funds for the payment of which are to be derived in whole or in part from assessments upon the property benefited, "and such improvements as the city council shall by ordinance prescribe," to be made by contract let to the lowest bidder, a contract by the city for the construction of additions to its existing water works system must be let by competitive bidding.

Where, under the call of a board of public works for bids for the construction of additions to the city water works system, the specifications, made in conformity with charter and ordinance provisions, provided that warrants issued in payment should draw interest from the completion of the work and that a reserve fund of thirty per cent. of the contract should be held for thirty days after the completion of the work, upon which laborers and material men should have a prior lien, the board of public works cannot, after accepting a bid, modify the contract so as to provide that the interest should run from the date of issuance of the warrants and that the reserve fund of thirty per cent. should be held to secure payment of laborers and material men, and any valid claims for fees or royalties on any patented article connected with the work, and as security for the replacement or completion of any defective or uncompleted work which may be found, and to secure the repayment of any interest moneys advanced prior to the date of the final completion of the work, as such alterations in the contract change it materially from the one submitted to competitive bidding.

Article 8, § 7, of the state constitution prohibiting municipal corporations from loaning their money or credit to or in aid of

any individual or corporation, is violated by a contract which provides that the city's warrants in payment of certain contract work shall bear interest from date of issuance, but that, on completion of the work, the contractors shall refund to the city all sums it has paid, or incurred liability to pay, as interest between the date of issuance of the warrants and the final completion of the work.

An ordinance of the city council directing the board of public works to enter into a contract for a public improvement is invalid, when the city charter provides that, in the letting of contracts for such works, the discretion as to the acceptance or rejection of bids is vested exclusively in the board of public works.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Affirmed.

*Clise & King (Ralph Moody, of counsel),* for appellants Gahan & Byrne.

*W. E. Humphrey,* and *Edward Von Tobel,* for appellants Thompson *et al.*

*Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

ANDERS, J.—This action was instituted to restrain the board of public works of the city of Seattle from entering into a contract with the firm of Gahan & Byrne for the construction of certain additions to the existing water works of said city. By the charter of the city of Seattle, the legislative powers of the city are vested in a mayor and city council. The city council has power generally to control and manage the property of the city, but has no administrative, as contradistinguished from legislative, powers. Among the powers expressly conferred upon the city council is the power to provide by ordinance for erecting, purchasing or otherwise acquiring, water works, within or without the city, and to control the use and price of water supplied. The board of public works is an administrative

department of the city, and consists of the city engineer, superintendent of streets and the superintendent of lighting and water works. It is the province of the city council to determine by ordinance what public works shall be prosecuted; and, when it has determined that a particular work shall be undertaken, it then becomes the duty of the board of public works to enter upon, prosecute and complete the designated work in accordance with the provisions of the general ordinance in relation to public works. The powers of the board of public works are defined by the city charter, and among them is the power to take charge of, superintend, manage and control the water works of the city and all things connected therewith, and to manage, direct and control the building and operation thereof. It is provided by § 10 of article 8 of the charter that

"All local improvements, the funds for the making of which are directly or indirectly to be derived, in whole or in part, from the assessments upon the property benefited thereby, and *such improvements as the city council shall by ordinance prescribe,* shall be made by contract to be let to the lowest bidder therefor, under the management of the board of public works."

And by § 14 of the same article it is declared that

"All public improvements to be made by contract shall be let to the lowest bidder therefor. Before awarding any such contract the board of public works shall cause to be published in the official newspaper of the city a notice, for at least ten days before the letting of such contract, inviting sealed proposals for such work, the plans and specifications whereof must at the time of the publication of such notice be on file in the office of the secretary of the board, subject to public inspection. Such notice shall state generally the work to be done, and shall call for proposals for doing the same, sealed and filed with the secretary on or before the day and hour named therein. All bids shall be accompanied by a certified check payable to the order of the city comptroller for a sum not less than five per

cent. of the amount of the bid; and no bid shall be considered unless accompanied by such check."

And in § 15 it is provided that

"At the time and place named, such bids shall be publicly opened and read. No bid shall be rejected for informality, but shall be received if it can be understood what is meant thereby. The board shall proceed to determine the lowest bidder and may let such contract to such bidder, or, if in their opinion all bids are too high, they may reject all of them and readvertise, and in such case all checks shall be returned to the bidders; but if such contract be let, then and in such case all checks shall be returned to bidders, except that of the successful bidder, which shall be retained until a contract be entered into for making such improvement between the bidder and the city in accordance with such bid. . . ."

Section 16 prescribes that, in letting all contracts for public improvements, the board shall provide therein that at least thirty per cent. of the amount due the contractor on estimates shall be retained to secure the payment of laborers who have performed work thereon and material men who have furnished materials therefor; and such laborers and material men shall have thirty days after the work has been completed for a lien on such thirty per cent. so reserved for labor done and materials furnished, which lien shall be senior to all other liens, whether by judgment, attachment or contract; and no improvement shall be deemed completed until the board shall have filed with the city clerk a statement, signed by a majority of them, declaring the same has been completed.

Pursuant to law and the above mentioned provisions of the charter, the city council, in the month of October, 1895, passed ordinance No. 3990, providing for the extension of the existing water system of the city, setting forth the estimated cost thereof, and providing for the submission of the same to the qualified voters of the city at a

special election to be called for that purpose. This ordinance, in full, is made a part of the complaint herein, by stipulation of the respective parties. At an election duly held on December 10, 1895, more than three-fifths of the electors voting thereat voted in favor of the proposition as submitted. Thereafter, and on September 22, 1898, the board of public works of said city caused to be published in the official city newspaper a notice calling for bids for the construction of such additions, which notice contained the following:

"All bids must be made in accordance and comply with the plans and specifications now on file in the city engineer's office, and in compliance with ordinance 3990."

The provisions of the charter requiring thirty per cent. of the entire price to be retained for the period of thirty days after the completion and acceptance of the work were a part of the specifications on file with the secretary of the board of public works at the time of the publication of the call for bids. Ordinance No. 3990 was also a part of said specifications, and said ordinance prescribed the form of the warrants to be issued and that the same should draw interest at the rate of five per centum per annum from the date of the completion of the contract and acceptance of the additions to the water works system of the city authorized by said ordinance, and that warrants issued under the authority of said ordinance were payable out of the Cedar River Water Supply Fund of Seattle, created by said ordinance. A form of proposal was adopted and furnished to intending bidders. But one bid was received in response to the call for bids, and that was the bid of appellants Gahan & Byrne. It appears that their bid, when opened by the board, had attached thereto the following proviso:

" This bid is conditioned on the interpretation of the payment clause in these specifications, meaning 70 per

cent. of the monthly current estimate of the engineer to be paid on the 20th of the subsequent calendar month; that each month's work is to be inspected, and, if satisfactory, to be accepted within thirty days thereafter; that 27 per cent. is to be paid upon such acceptance; and that the remaining 3 per cent. is to be paid one hundred fifty days after such acceptance."

Gahan & Byrne, in their bid filed with the board of public works, offered to perform the work proposed, in accordance with the provisions of the ordinance and the specifications, for the sum of $1,238,622.20, which amount was distributed over the several items set forth in the specifications. The board of public works, thinking that the bid did not include the amount of $64,000, which was included in the ordinance and proposed form of contract for rights of way, engineering and other expenses, added that sum to the aggregate amount of the bid, reporting it, as they understood it, as a bid of $1,302,622.20. Gahan & Byrne called the attention of the board to their report to the city council, stating that the addition of the $64,000 was an error on the part of the board, and that they herewith hand in a schedule of proposed prices, by which the aggregate is distinctly shown, and in which the fixed estimate for real estate, engineering expenses, etc., is shown as an entity and deducted from the various items to which it had been theretofore attached under their reading of the specifications. The board of public works did not award the contract upon this bid, but, instead, reported the bid, with the attached condition, to the city council without recommendation. This bid was received by the board of public works on the 15th of November, 1898, and was then opened by the board, and on November 17th was submitted to the city council. On the last mentioned date, the council met in regular session and had the bid under consideration, but took no action thereon at that time. In a communication to the council, Gahan & Byrne, referring

to the condition attached to the original bid, say it is misleading in the words used and

"we do now expressly agree that the same shall be construed as follows: That, in consideration of the warrants bearing interest at the rate of five per cent. per annum from the date of issuance, we do hereby contract and agree to pay into the city treasury, prior to the payment to us of any of said thirty (30) per cent. reserve provided in said contract, a sum or sums of money equaling and aggregating the full amount of all interest paid, due or accrued, at the date of the final acceptance of the work, together with interest at the rate of five per cent. per annum upon all sums actually paid by said city as interest upon said warrants, upon all warrants issued on said Cedar River Water Supply Fund of Seattle during the progress of the work and prior to the date of the final acceptance thereof."

This proposition was laid before the city council in open session on November 21st, and, on November 22d, the city council passed ordinance 5128 which was, on November 25th, approved by the mayor. This later ordinance amended ordinance No. 3990, as to the time when warrants should commence to draw interest, as follows:

" Said warrants shall bear interest at the rate of five per cent. per annum from the date of their issuance, and such interest shall be paid, and said warrants shall be redeemed, from said fund at the times, and in the manner, expressly set forth in detail in said ordinance No. 3990, as amended by this ordinance."

Ordinance 5128 also authorized and instructed the board of public works to enter into a contract with the said Gahan & Byrne for the construction of certain additions to the existing water works of the city of Seattle, commonly known as the "Cedar River Water System," in accordance with the terms and specifications of the bid submitted by the said Gahan & Byrne to the board of public works of the city of Seattle on the 15th day of November, 1898, as explained by their written statement

filed with the board of public works on November 21, 1898. This amendatory ordinance further provides that on or before the 20th day of each month, during the progress of the work included in this contract, warrants shall be issued for seventy per cent. of the contract price of the estimated amount of such work, returned by the city engineer as having been done during the preceding calendar month; and the balance of said contract price, being thirty (30) per cent. thereof, shall be retained to secure the payment of laborers who shall have performed work thereon, and material men who shall have furnished material therefor, and any valid claims for fees or royalties on any patented invention, article or arrangement connected with the work, and as security for the replacement or completion of any defective or uncompleted work which may be found, and to secure the repayment of any interest moneys advanced prior to the date of the final completion. Upon the approval of ordinance 5128, the plaintiff, a taxpayer of the city and owning real and personal property therein subject to taxation, filed the complaint in this action, in which the facts hereinbefore stated, with the exception of such facts as were subsequently embodied in the complaint by stipulation, were set forth, in which it is alleged that ordinance 5128 provides for material changes in, and material amendments to, ordinance 3990, and provides for material alterations in the contract and in the terms specified in the call for bids and the form of contract made a part of the specifications upon which bids were to be based. The particular changes and alterations alleged refer (1) to the change in the interest dates on the warrants, and (2) as to the diversion of the reserve fund heretofore mentioned to purposes not authorized by the charter. The complaint also alleges, in substance, that the modifications made by ordinance 5128 are important and material changes and departures from the terms stated in the call.

for bids and the specifications, and that it was because of the original provisions in ordinance 3990 and in the specifications and call for bids which are modified by ordinance 5128 that no other bid or bids were received by the board in answer to the call, and that, if ordinance 3990 and the specifications and call for bids had contained the modifications made by the later ordinance, at least one bid for the construction of the extension for a lower sum than that bid by Gahan & Byrne would have been received by the board in response to its call. The complaint further charges that the contract about to be entered into between Gahan & Byrne and the board of public works was made without competitive bidding, and would be the result of private negotiations between the proposed contractors and the officers of the city; also, that the proposed action of the city officers is unlawful, and that, if the proposed contract is entered into by the board in obedience to the command of the council, considerable pecuniary loss will be suffered by the city and by the plaintiff and other taxpayers of the city. The complaint prays for an injunction against the board and contractors prohibiting them from entering into the contract proposed, and for an adjudication that ordinance 5128 is invalid. The defendants interposed a demurrer to the complaint, upon the ground that it failed to state facts sufficient to constitute a cause of action. This demurrer was overruled and, defendants electing to stand upon their demurrer and declining to further plead, a decree was entered perpetually enjoining the execution of the proposed contract, and from this judgment this appeal was taken.

It is contended by the learned counsel for the appellants, if we understand their position, (1) that it was not necessary to submit the contract for the contemplated improvements to competitive bidding, and (2) that, even if it was necessary so to do under the charter of the city, the change

made in the bid originally submitted was immaterial, and therefore not injurious to the city or to the plaintiff. It is claimed by counsel, with much earnestness, that, under § 10 of article 8 of the charter, contracts for improvements are required to be let to the lowest bidder only in cases of local improvements, where payment is to be made therefor from the assessment of property benefited thereby; and they invoke the well-known rule of statutory construction that, where general words follow an enumeration of persons or things by words of a particular and special meaning, such general words are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. But we are of the opinion that this rule has no application in the present instance. As we have already seen, this section provides that all local improvements, the funds for the payment of which are directly or indirectly to be derived in whole or in part from assessments upon the property benefited thereby, and such improvements as the city council shall by ordinance prescribe, shall be made by contract to be let to the lowest bidder therefor, under the management of the board of public works. It would seem almost too plain for argument that it was the intention and policy of the framers of the charter to submit all contracts authorized by the city to public competition. In the first part of the section, local improvements are mentioned, and, in the second clause, such improvements as the city council shall by ordinance prescribe. This last provision must necessarily refer to improvements different from those before specified, for otherwise it would be manifestly superfluous. We think there can be no question but that contracts of the character of that now under consideration fall within the provisions of the charter requiring contracts to be let to the lowest bidder. And, that being so, it follows that neither the board of public works of the city nor any other

officer or officers of the city had any legal right or authority to enter into a contract which was not the direct result of competitive bidding, or of an opportunity for such bidding. The board of public works is not vested with any discretionary power in regard to awarding contracts, and they have no legal right to enter into a contract not clearly authorized by the provisions of the charter under which they act. A legal contract can be made by this board only in the mode and manner pointed out by the charter, and a contract made in any other way would be clearly illegal and void.

In *Times Publishing Co. v. Everett,* 9 Wash. 518 (37 Pac. 695, 43 Am. St. Rep. 865), in speaking of the powers of officers of municipal corporations, this court said:

"Agents of municipal corporations must maintain themselves within the law in the matter of awarding contracts, and if through fraud or manifest error not within the discretion confided to them, they are proceeding to make a contract which will illegally cast upon taxpayers a substantially larger burden of expense than is necessary, the courts will interfere by injunction to the effect of restricting their action to proper bounds."

We think the doctrine therein announced is not only correct, but fundamental. It is plain that the board of public works called for bids upon a basis entirely different from the contract that was enjoined by the court below; and to accept this contract would be to ignore entirely the plain provisions of the organic law of the city. It was the duty of the board to accept or reject the bid as made, and not to accept it as subsequently modified at the suggestion of the bidders. While it is true that the board may rightfully award a contract to the only bidder therefor, it seems clear to us that such a contract must be based upon the requirements of the law. In other words, the call for bids must be such that all persons interested may stand upon

the same footing and know just what character of contract will be required. So far as we are informed, courts have quite uniformly held, under constitutions, statutes or charter provisions requiring contracts to be let upon sealed proposals, that contracts made by private negotiations are void, and the letting of them may be enjoined at the suit of any person who would be prejudiced thereby.

In *Fones Bros. Hardware Co. v. Erb,* 54 Ark. 645 (17 S. W. 7), the question now under consideration was elaborately discussed by the court. The only charge made against the public officers in that case was that they were about to let a contract without competitive bidding, and the court held that they could be restrained from so doing at the suit of a taxpayer. The constitutional provision under discussion in that case is as follows:

"All contracts for erecting or repairing public buildings or bridges in any county, or for materials therefor, . . . shall be given to the lowest responsible bidder under such regulations as may be provided by law."

And the court said:

" The method prescribed is well understood, clearly defined and of distinctive character, specially adapting it to a conservation of public interests. It embodies three vital principles—an offering to the public, an opportunity for competition and a basis for exact comparison of bids."

Applying that doctrine to the case in hand, it can hardly be reasonably claimed that the contract now before us was ever offered to the public, or that there was an opportunity for competition therefor. In the same case the court further says:·

" Any statutory regulation of the matter which excludes or ignores either principle destroys the distinctive character of the system. Any arrangement which excludes competition prevents a letting to the lowest bidder."

The following cases are to the same effect: *Beaver v. Trustees,* 19 Ohio St. 97; *Wickwire v. City of Elkhart,*

144 Ind. 305 (43 N. E. 216); *State ex rel. Clark v. Board of Commissioners,* 11 Neb. 484 (9 N. W. 691); *McQuiddy v. Brannock,* 70 Mo. App. 535; *Frame v. Felix,* 167 Pa. St. 47 (31 Atl. 378).

In *McQuiddy v. Brannock, supra,* it was urged that the contract was valid, for the reason that it was subsequently approved by the council. The charter of Kansas City required the work to be publicly submitted to competitive bidders, and the contract let to the best bidder. The court says:

" This is also the general policy of the state. This policy protects the property holder, destroys favoritism and renders corruption less easy."

And the court further observes:

" It is equally apparent that if public work is to be submitted to public competition and the contract let to the best bidder on such submission, a substantially different contract from that proposed and bid on can not be made. . . . If this could be done, then, though the ordinance and public submission for bids called for one kind of material, a contractor could be favored with a contract for some less expensive material. So it can be clearly seen that if an ordinance approving a contract already let be allowed to make such contract valid, notwithstanding it substantially differed from the contract contemplated by the ordinance directing the improvement and that bid on, a contract may be enforced which was not contemplated when the proceedings were set on foot and adopted—a contract which has never been laid before competitive bidders."

It would seem that this language is peculiarly applicable to the case at bar. It is claimed by counsel for the respondent that ordinance 5128, authorizing the execution of this contract, is unconstitutional and void, being in contravention of § 7 of article 8 of the state constitution, which provides that

" No county, city, town or other municipal corporation shall hereafter give any money or property or loan its money or credit to or in aid of any individual, association, company or corporation."

We think this point is well taken, and that the effect of the ordinance was to authorize the loan of the city's money or credit to the contractors. This ordinance No. 5128 is also in conflict with the charter in so far as it commands the board of public works to enter into this particular contract. The charter provisions already mentioned clearly show that, in the letting of contracts for public works, the discretion as to the acceptance or rejection of bids is vested exclusively in the board of public works. But this ordinance plainly undertakes to interfere with such discretion. In fact, it deprives them of any opportunity whatever to exercise their discretion in respect to this particular contract.

We deem it proper to say that no charge is made of fraud on the part of the proposed contractors, or of favoritism on the part of the city officials. On the contrary, the whole transaction is characterized by the utmost good faith on the part of all parties concerned. But this court can consider nothing but the law applicable to the facts stated in the complaint, as amended by stipulation of the parties; and, in so doing, we are constrained to hold, for the reasons above indicated, that the judgment appealed from was right and must be affirmed; and it is so ordered.

GORDON, C. J., and DUNBAR, J., concur.

REAVIS, J., not sitting.