[No. 10770.    Department One.    April 28, 1913.]

## J. D. MATTHEWS et al., Appellants, v. THE CITY OF ELLENSBURG et al., Respondents.[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — WATER WORKS—PRO-CEEDINGS TO ESTABLISH. A city may adopt a plan for obtaining a water supply outside of the city without providing for a distributing system within the city, under Rem. & Bal. Code, § 8005, authorizing a city to construct, acquire, or add to water works, within or without its limits, for the purpose of furnishing an ample supply of water, and § 8006, requiring it to adopt the system or plan proposed and submit it to the qualified electors; and the submission is not affected by the fact that the ordinance adopting the supply system also stated that it was further proposed that the supply plant would be connected with a distributing system within the city limits to be constructed by local assessments on property benefited.

SAME—SUBMISSION TO VOTERS—VALIDITY. Under Laws 1911, p. 443, § 8 and p. 451, § 19, authorizing any local improvement to be initiated directly with the council, without submission to the voters, whose decision is final, a resolution creating a local improvement district for a distributing system for water works is valid, although prior to a special election called to authorize the acquisition of a supply system outside of the city which it was intended to connect with the distributing system.

SAME—SUBMISSION TO VOTERS—SUFFICIENCY. The submission to the voters of a plan to acquire a supply system for proposed water works, without submitting a plan to connect the supply with a distributing system to be constructed in the city by local assessments upon property benefited, is not an evasion of the requirement that the whole plan be submitted to the voters, where the two systems were to be constructed separately and paid for by different methods, and all the voters understood that the proposed supply was to be connected with a distributing system thereafter constructed.

SAME — SPECIAL ASSESSMENTS — BENEFITS — OBJECTIONS. Under Laws 1911, p. 444, § 10, the objection that a distributing system for water works constitutes a general benefit to the city and is of no special benefit to property, can only be urged to the city council on a hearing upon the assessment roll.

SAME—CONTRACTS—PAYMENT IN BONDS—NOTICE. Where calls for bids for the construction of water works had to be submitted on forms furnished by the engineer, which specified that payments may

[1] Reported in 131 Pac. 839.

be made by delivering bonds at par, contractors are sufficiently noti-
fied of such provision for payment; and failure to give notice would
be a mere irregularity not affecting the validity of the contracts.

SAME—CONTRACTS—VALIDITY—RESERVE FUND. The city council
having provided by ordinance that a reserve fund of twenty-five per
cent be withheld from contractors constructing water works, may
afterwards waive the condition and contract for a reserve fund of
but fifteen per cent.

Appeal from a judgment of the superior court for Kittitas
county, Kauffman, J., entered March 1, 1912, in favor of
the defendants, after a trial on the merits before the court,
dismissing an action for an injunction. Affirmed.

*Carroll B. Graves*, for appellants.

*Jay A. Whitfield* and *E. E. Wager*, for respondents.

MOUNT, J.—This action was brought by the plaintiffs,
as taxpayers, to prevent the delivery of certain bonds to the
defendant International Contract Company by the city of
Ellensburg, and also to enjoin the International Contract
Company from proceeding under a contract for the con-
struction of certain water works for the city. Upon issues
joined, the case was tried to the court without a jury, and
resulted in a dismissal. Plaintiffs have appealed from that
judgment.

The facts are not disputed, and are in substance as fol-
lows: The city of Ellensburg is a city of the third class.
The city and its inhabitants are supplied with water for
fire, domestic, and other purposes by a water works sys-
tem operated by a private corporation under a franchise
from the city. On August 7, 1911, the city passed Ordinance
No. 549, which specified and adopted a system and plan for
the construction of a water supply by the city. It declared
the estimated cost of the plan, and provided that the system
to be constructed should be paid for by bonds payable, prin-
cipal and interest, from the revenues of the system. The
ordinance also provided for a submission of the system and
plan, together with the method of payment, for ratifica-

tion or rejection to the qualified voters of the city at a special election to be held on September 5, 1911. The plan provided that a well or wells should be put down on certain property described in the ordinance, a pumping station and certain pumps and other machinery and a reservoir to be constructed on lands described, a pole line to transmit electric power to operate said pumping plant from the municipal plant, and a main pipe line from the pumping station to said reservoir and to the city. The ordinance estimated the cost of the plant at $100,000, the money to be derived by the sale of special bonds issued against the earnings of the plant. The ordinance also contained the following:

"It is proposed that said above described water works plant be connected with distributing system located within the limits of said city, which shall be constructed by said city by local assessment upon the property specially benefited thereby, or by such other method as the city may adopt." Ordinance No. 549.

On August 11, 1911, the city council passed a resolution declaring the intention of said city to construct a water distributing system within the limits of the city, the cost and expense of which was to be borne by the property specially benefited. Thereafter, on September 5, 1911, the water works plan as proposed by Ordinance No. 549 was submitted to the voters, and the same was approved by the necessary vote. Thereafter, on October 16, 1911, the city passed an Ordinance No. 558, which provided for the construction of the water distributing system in accordance with the resolution of August 11, 1911, and provided for the payment therefor by bonds at the cost and expense of the property specially benefited thereby by special assessment against the property within the district to the amount of $50,000, the estimated cost thereof.

After the approval of Ordinance No. 549, which provided for the water works plan and system without the city, but did not include the distributing system, the city council

instructed the clerk to advertise for the sale of both the special water bonds and local improvement district bonds. The clerk, on October 23, 1911, published notices calling for bids for the purchase of the water bonds and the local improvement bonds separately. No bids were received for either of these issues. Thereafter, on November 29, 1911, the city clerk, under the direction of the city council, again published notice offering for sale the special bonds under Ordinance No. 549, and calling for bids for such bonds; and at the same time the clerk also published notice offering for sale the local improvement bonds to be issued under Ordinance No. 558, and also calling for bids for the performance of the work in constructing a reservoir, pumping plant, wells, etc., as provided for in Ordinance No. 549, and for the water distributing system under Ordinance No. 558. This notice did not specify that the work of construction of the water works plan and the distributing system would be paid for in bonds, but it did specify that all bids for work must be made on a form prepared by the city engineer. This form provided that the work on the distributing system within the city would be paid for in bonds issued to the contractor upon the special assessment fund, and that the work on the water supply plant outside the city would be paid for in bonds issued against the revenues of the system. Thereafter, bids were received upon forms furnished by the city engineer, and each bidder agreed to take said bonds at par in payment for the work. Bids were made for each piece of work separately, to be paid for in bonds as stated. The bid of the defendant International Contract Company was the lowest bid for the construction of the pumping plant outside the city, and also the lowest bid for the construction of the distributing plant inside the city, and well within the estimates. The contract was awarded to the International Contract Company, and said company, upon the execution of the contract, began work. Whereupon the plaintiffs brought this action to prevent the delivery of the bonds, and

to enjoin the city and the other defendants from proceeding with the construction work under the contract.

The appellants argue that the court erred in dismissing the action for several reasons, which we shall notice in their order. (1) It is contended that, because the proposed work was not an addition to or betterment of existing water works, and did not specify a plan for a completed system and declare the estimated cost and submit such plan for the ratification of the qualified voters, the city was without authority to proceed with the work. In short, as we understand appellants' position, it is that the city was authorized only to adopt a complete system for obtaining and delivering water to the consumers. It will be noticed that the city attempted to, and did by Ordinance No. 549, adopt a plan with all the necessary requirements for obtaining a water supply. That ordinance did not provide for a distributing system within the city. Counsel for appellants maintain that the supply and distributing systems constitute the whole of the water works, and that the city could not adopt one without the other. We are of the opinion that this result does not necessarily follow. The statute (Rem. & Bal. Code, § 8005), provides:

"Any incorporated city or town within the state be, and is hereby, authorized to construct, condemn and purchase, purchase, acquire, add to, maintain, conduct and operate waterworks, within or without its limits, for the purpose of furnishing such city or town and the inhabitants thereof, and any other persons, with an ample supply of water for all uses and purposes, public and private."

The next section provides:

"Whenever the city council . . . of any such city or town shall deem it advisable that the city or town . . . shall purchase, acquire, or construct any public utility mentioned in section 8005 . . . the common council . . . shall provide therefor by ordinance, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, and the same shall be submitted . . . to the qualified voters." Rem. & Bal. Code, § 8006.

By the first section above quoted, it is clear that a city is authorized to construct and maintain water works without the limits of the city for the purpose of furnishing such town and the inhabitants thereof with a supply of water. While it is no doubt necessary that the water supply shall be distributed to users in different parts of the city, it does not necessarily follow that the city in adopting a plan and system for such supply must at the same time construct a distributing system. It may do so as a matter of course, and of necessity some distributing system must at some time be furnished; but before the distributing system is furnished, it is proper that the supply shall be provided for, and the city in this case, by the ordinance and the plans for the supply system, did not undertake to adopt or provide for a distributing system. It is true the ordinance which adopted the supply system also stated that it was further proposed that a supply plant would be connected with a distributing system located within the limits of the city, which is to be constructed by said city by local assessment upon the property specially benefited thereby. But that clause in the ordinance was for the information of the voters and was not necessary to the validity of the supply system which was provided for. The supply system was to be a completed system within itself for that purpose, and the distributing system was to be provided for in another method entirely consistent with the powers and duties of the city. It is true that we said in *State ex rel. Craig v. Newport*, 70 Wash. 286, 126 Pac. 637:

"We find no warrant for holding that a council may, by mere resolution, do piecemeal what it may not do as an entirety. If it could adopt and purchase or lease a source of supply without plan or submission, it could, with equal show of reason, carry out as separate acts in the same way each detail of a new water system, and the statute would be nugatory."

But that was said in reference to a case where we held that the city could not adopt a plan by mere resolution, or pur-

chase a source of supply without submission to a vote of the people of the city. It does not apply to a case where the city may do a work as an entirety, or to a case where the plan has been adopted by a vote of the people. We are of the opinion that the city was justified, under the statutes and ordinances above quoted, in adopting and treating the water supply as a completed part of the system, and that it was not necessary in order to be valid that the whole system for obtaining the supply and distribution of the water should be made at the same time. To hold otherwise would be to say that a part of a distributing system could not be constructed without the whole thereof, when it is common knowledge that large areas of any city do not require a distributing system for water because such areas are unoccupied. We think it was the intention of the legislature to authorize cities to construct their water plants in a businesslike way as the same may be found necessary by the city, and that a part of an entire contemplated system might be completed at one time and the other parts built as necessities require.

(2) It is argued that the resolution creating the local improvement district, passed by the city council on August 11, 1911, was in excess of the powers of the city council, for the reason that it was passed before the special election of September 5, 1911. We think there is no merit in this contention, because the distributing system was adopted by a resolution of the city council and was independent of the plan which was submitted to the voters. In other words, the vote of the people on the supply plan did not necessarily control the jurisdiction of the city council to order the local improvement. The local improvement was for the purpose of furnishing water directly to the property benefited, while the supply system was a general benefit to the whole city. The statute (Laws 1911, p. 443, § 8), provides: That any local improvement may be initiated directly with the city or town council by a resolution declaring its intention to order such improvement. No submission to the voters is necessary,

and the action and decision of the council on such question is final and conclusive. Laws 1911, p. 451, § 19.

(3) Appellants next contend that the initiation of the local improvement district was a part of the proposed water system, and was an evasion of the requirement to submit that portion of the plan and its estimated cost to the vote of the people; that the system constitutes a general benefit to the community at large and cannot possibly be of any special benefit to the city, by reason of the fact that a private water system is already in use; that the owners of real estate within the city receive no benefit other than the general public received. It is no doubt true that the distributing system proposed to be constructed upon the improvement district plan will be used in connection with the water supply system. But, as we have seen above, these two works may be constructed separately and paid for in the manner provided for in the contracts. It was understood by all the voters of the city who had informed themselves of the proposed plan as submitted for a water supply, that a distributing system would thereafter be constructed. So that the voters knew what was sought to be attained, and they consented thereto. We think it cannot be said that there was any evasion.

On the other points, to the effect that the distributing system constitutes a general benefit and is of no special benefit; those questions can only be urged to the council on a hearing upon the assessment roll for the local improvement. Laws 1911, p. 444, § 10.

(4) Appellants further argue that the ordinances did not provide for the issuance of bonds in payment of the work, and that there was no notice to contractors that the work was to be paid for in bonds. As we have seen above, the bonds were offered for sale and no bids were received therefor. Calls were then made for bids, and bidders were notified that bids would be made upon blank forms furnished by the engineer. And bids were made upon these forms, which provided that payment may be made by delivering bonds at par. The act

of 1911, by which these improvements were authorized, provides for the issuance of bonds, and that the same may be issued to the contractor constructing the improvement. Laws 1911, p. 472, §§ 46, 48.

It is immaterial that notice to the contractors did not state that the work upon which bids were asked would be paid for in bonds, as the notices provided that blank forms for bids furnished by the engineer only could be used; these blank forms did provide for payment in bonds. At most this was a mere irregularity which did not affect the validity of the contracts. *Kneeland v. Furlong*, 20 Wis. 460; *North Yakima v. Scudder*, 41 Wash. 15, 82 Pac. 1022.

(5) Lastly, it is contended by the appellants that the contract which the city finally made with the International Contract Company was not in conformity with Ordinance No. 557 relating to local improvements, because that ordinance provides that a reserve fund of twenty-five per cent of the estimate shall be withheld for a period of thirty days after final completion of the improvement, while the contract provides for a reserve fund of only fifteen per cent. *Moran v. Thompson*, 20 Wash. 525, 56 Pac. 29, is cited to sustain this position. That was a case where the charter required a certain amount to be withheld, and the city council, of course, was bound by the provisions of the charter; while in this case the reserve fund of twenty-five per cent was provided for by ordinance. The power which provided for the reserve fund of course could waive it. This reserve was for the benefit of the city, and the city was authorized, of course, to waive that provision if it saw fit to do so, which it apparently did in this case. In any event, this provision of the ordinance applied only to the improvement district and not to the water supply contract.

We find no error in the judgment. It is therefore affirmed.

CROW, C. J., PARKER, and GOSE, JJ., concur.