[No. 27299. Department One. October 26, 1938.]

THE STATE OF WASHINGTON, *on the Relation of The Willapa Electric Company et al., Plaintiff*, v. THE SUPERIOR COURT FOR PACIFIC COUNTY *et al., Respondents.*[1]

[1]Reported in 83 P. (2d) 742.

524

*Welsh & Welsh* and *Theodore B. Bruener,* for relators.

*Houghton, Cluck & Coughlin, E. K. Murray,* and *Herman E. Lafky,* for respondents.

*Hayden, Metzger & Blair, amicus curiae.*

BLAKE, J.—This cause comes up on certiorari to review an order of necessity and public use entered in condemnation proceedings. The action was brought by public utility district No. 2 of Pacific county, a duly organized and existing public utility district under chapter 1, Laws of 1931, p. 3, Rem. Rev. Stat., § 11605 [P. C. § 4498-11] *et seq. Vickers v. Schultz,* 195 Wash. 651, 81 P. (2d) 808. The defendant (relator here) The Willapa Electric Company owns and operates plants and facilities for the generation and transmission of electricity in Pacific county and a transmission line from Raymond to Cosmopolis. All of these properties, "used and useful" in the operation of defendant's business of generating and distributing electric energy, plaintiff seeks to take by eminent domain.

When plaintiff applied for an order of necessity and public use, the defendants interposed ten specific objections to the entry of the order, all of which were overruled. We are asked, however, to review only seven.

First, it is urged that no adequate fund has been provided whereby the relators may be assured of payment of compensation awarded for the taking and damaging of their property. From the resolution initiating the proceedings, it appears that the district proposes to pay the compensation awarded from the proceeds of utility bonds payable out of revenues from the properties acquired. Relators argue, first, that § 7, chapter 1, Laws of 1931, p. 22, Rem. Rev. Stat., § 11611 [P. C. § 4498-17], which provides for such pro-

cedure, contravenes the ninth amendment to the state constitution; and second, that, since the act does not limit the time within which an award must be paid or rejected, the failure to provide a fund out of which relators may be assured payment effects an indefinitely continuing option on their property for the amount of the award.

In support of the first contention, relators cite a number of cases, of which *Connecticut River R. Co. v. County Commissioners*, 127 Mass. 50, 34 Am. Rep. 338, is typical. It is, indeed, held in that case that " 'the means for securing indemnity must be such that the owner will be put to no risk or unreasonable delay.' " But it also appears from the opinion that " *'payment need not precede the seizure.'* " This is not the case under the ninth amendment, which provides: "No private property shall be taken or damaged for public . . . use without just compensation *having been first made.*" Under such constitutional provisions as ours, the rule is well settled that the establishment of a fund to insure payment of the compensation awarded is not a prerequisite to the maintenance of condemnation proceedings. 2 Lewis Eminent Domain (3d ed.), § 678; *State Water Supply Commission v. Curtis*, 192 N. Y. 319, 85 N. E. 148; *In re Dexter-Greenfield Drainage Dist.*, 21 N. M. 286, 154 Pac. 382; *State Highway Commissioner v. Kreger*, 128 Va. 203, 105 S. E. 217. In the case last cited, after briefly reviewing cases of the character cited by relators here, the court said:

"It is only where the statute permits, or to the extent that it permits, the seizure and use of the property previous to the payment of the compensation that it is at all essential to the validity of the statute that it should provide any security for payment of the unpaid compensation."

Nor do we think there is validity in the objection that, since the statute does not fix a limitation of time

within which the award of compensation may be accepted or rejected, it effects an option of indefinite duration in favor of the appropriator. In the absence of such a limitation, the appropriator must elect to accept the award within a reasonable time, or it will be deemed to have abandoned the proceedings. *Port Townsend Southern R. Co. v. Barbare,* 46 Wash. 275, 89 Pac. 710; *State ex rel. Moore v. Superior Court,* 100 Wash. 481, 171 Pac. 248. In the first case above cited, the court said:

"The private owner cannot be disturbed in his possession until the award is first paid into court for his use. The condemning party is not entitled to a decree of appropriation until the award is paid into court. The trial court would certainly not be authorized to enter a decree of appropriation upon the motion of the appropriator without the money having been first paid; nor could the court require the party seeking to appropriate to take the property against its will, especially before the damages had become finally determined. It is true no time is fixed within which the condemning party must pay the award. It must, therefore, do so within a reasonable time, or be held to have abandoned the proceedings."

The incidental inconvenience which the property owner may suffer in the meantime is deemed compensated, in case of acceptance, by interest on the award from date of verdict, and in case of rejection, by the retention and enjoyment of his property. *North Coast R. Co. v. Aumiller,* 61 Wash. 271, 112 Pac. 384.

█ The next objection urged is directed to § 4 of the resolution adopted by the commissioners of the utility district, authorizing its attorneys to institute and prosecute condemnation proceedings. Section 4, in substance, authorizes the attorneys, in order to minimize damages and avoid excessive awards of compensation, to determine what items of the "plants and fa-

cilities are used or useful and should . . . be taken." When the contention was made in the lower court that this section delegated legislative power of the district to its attorneys, the commissioners met and passed a resolution eliminating the section. The latter resolution was offered in evidence.

It is urged that the commission had no power to so change the original resolution, and that the court erred in receiving in evidence the modifying resolution. The original resolution was attached to and made a part of the petition. The modifying resolution amounted to nothing more than an amendment of the petition, which, obviously, the plaintiff had the right to make and the court had the power to permit. The amendment did not change the fundamental purpose of the action, which is to acquire all the plants and facilities in Pacific county, "used and useful" in the maintenance and operation of relator The Willapa Electric Company's business of generating and distributing electricity.

The relators further contend that the petition is defective, in that it does not contain a sufficient description of the property sought to be condemned. As we have stated, the resolution authorizing the institution of condemnation proceedings is attached to and made a part of the petition. The resolution authorizes the condemnation of

". . . the existing works, plants and facilities used or useful for the generation, transmission and distribution of electricity now operated by the Willapa Electric Company, a Washington corporation, in Pacific County, Washington, including a certain transmission line extending from Raymond in Pacific County to Cosmopolis in Grays Harbor County. Said works, plants and facilities to be so acquired comprise an existing generation, transmission and distribution system, and include the following: . . ."

Then follow eight sub-paragraphs, describing specifically the character of the items of property sought to be condemned, including a detailed description of real estate. We think the property sought to be condemned is described with reasonable certainty, and this is all that is required. Rem. Rev. Stat., § 9218 [P. C. § 7548]; *Chehalis v. Centralia,* 77 Wash. 673, 138 Pac. 293. We do not see how the description could be made more specific except by a complete inventory of the property sought to be condemned. That is not required at this stage of the proceedings. Nor do we think that the qualifying phrase "used or useful," as used in the resolution, renders the description defective or ambiguous. See *Puget Sound Power & Light Co. v. Puyallup,* 51 F. (2d) 688.

Relators further contend that the act (chapter 1, Laws 1931 [§ 6 (b), (d), pp. 11, 12]) is unconstitutional, in that it permits the condemnation of private property for private use. This contention is based on the following language in § 6 (b), Rem. Rev. Stat., § 11610 [P. C. § 4498-16] (b):

"It shall be no defense to a condemnation proceeding hereunder that a portion of the electric current generated or sold by such public utility district will be applied to private purposes provided the principal uses intended are public;"

and on the provision in § 6 (d), Rem. Rev. Stat., § 11610 [P. C. § 4498-16] (d), to the effect that property may be condemned

". . . for the purpose of furnishing said public utility district, and the inhabitants thereof and any other person, including public and private corporations, within or without its limits, with electric current *for all uses.*" (Italics ours.)

We think the objection raised by relators in this connection is completely disposed of by the decision

of this court in *Tacoma v. Nisqually Power Co.*, 57 Wash. 420, 107 Pac. 199. The court there had under consideration chapter 159, Laws of 1905, p. 300, which authorized cities to condemn plants and facilities for the generation and distribution of electricity for "purposes *public and private.*" Meeting the objection that the quoted phrase rendered the act unconstitutional, the court said:

"It may be accepted as well established that, inasmuch as private property may not be taken for private use, any legislative act which attempted to confer such a power would be a nullity. It may also be accepted that where, in a legislative act, there is a conferring of authority to take private property for both public and private use in such a way that the two cannot be separated, the whole act is void. But it does not follow that the use of the word 'private' in the act under consideration renders this act void. . . .

"But in the act before us, every mentioned and described purpose is an undoubted public use. There is no commingling of public and private purposes, nor authority given under the act to use any of the facilities therein referred to for other than a distinctively municipal use. Unfortunately the word 'private' is incorporated in the act, and as such a purpose is a prohibited one, to that extent the act is obnoxious to the constitutional inhibition, and the word 'private' becomes a nullity. The withdrawal of the void part does not disturb nor affect the remainder of the act, the provisions of which are useful and necessary to the growing municipalities of this state in order to supply their inhabitants with needful public utilities, and it would be inconsistent with all just principles of constitutional law to hold the enactment of such purposes void because they are associated with, but not connected with nor dependent on, another provision which is bad and which, when stricken from the act, leaves the remainder complete and capable of being executed in accordance with the legislative intent."

That all of the purposes for which the relators' prop-

erty is sought to be condemned constitute a "public use," under the statute, there can be no doubt. *State ex rel. Chelan Electric Co. v. Superior Court,* 142 Wash. 270, 253 Pac. 115, 58 A. L. R. 779.

It is next contended that no evidence of the organization of the plaintiff district was offered. Relators themselves introduced certified copies of the proceedings whereby the district was created. And this court has held that the district is duly organized and existing under chapter 1, Laws of 1931. *Vickers v. Schultz,* 195 Wash. 651, 81 P. (2d) 808. The objection is without merit.

The next contention is directed to a portion of § 6 (b), chapter 1, Laws of 1931, which provides that, as evidence of valuation, the court shall submit to the jury the valuation placed by the assessor, for taxation purposes, upon the property sought to be condemned. The section further provides that, where plants and facilities are being operated without franchises on public highways, the jury shall consider, in determining the value thereof, the fact that such plants and facilities are "subject to be removed from such highways by reason of being so operated without such franchises."

It is urged that these provisions invade the province of the courts; that the matter of valuation and the method of ascertaining it is a judicial, not a legislative, question. Conceding, for present purposes, that that argument is sound, we do not think the question is now properly before us. When and if such evidence is offered and admitted at the trial, relators may properly raise the question of its competency and have a review of the ruling on appeal from judgment on the award.

Finally, it is contended that, under the proviso of § 3, chapter 51, Laws of 1933, p. 283, Rem. Rev. Stat.

(Sup.), § 9209-3 [P. C. § 1226-23], it is prerequisite to the maintenance of these condemnation proceedings that approval be had by a majority of the electors of South Bend and Raymond. That act (§ 1, p. 283, Rem. Rev. Stat. (Sup.), § 9209-1 [P. C. § 1226-21]) authorizes *cities and towns* to sell and dispose of electric energy to consumers within or without their corporate limits; (§ 2, p. 283, Rem. Rev. Stat. (Sup.), § 9209-2 [P. C. § 1226-22]) to acquire the necessary facilities to carry out the powers accorded by § 1; (§ 3) to exercise the power of eminent domain in the acquisition of such facilities,

"*Provided, however,* That *no city or town* shall acquire, by purchase or condemnation, any publicly or *privately* owned electric power and/or light plant or electric system located in any other city or town except with the approval of a majority of the qualified electors of the city or town in which the property to be acquired is situated; nor *shall any city or town* acquire by condemnation the electric power and/or light plant or electric system, or any part thereof, belonging to or owned *or operated by any municipal corporation, mutual, non-profit, or co-operative association or organization, or by a public utility district.*" (Italics ours.)

As we understand it, the argument is that the proviso carries a limitation on the powers of eminent domain conferred on utility districts by chapter 1, Laws of 1931. Of course, no such limitation can be found in the express terms of the proviso or in the body of the act. Nor do we think such a limitation can be reasonably implied. For the only reference to utility districts to be found in the act is in the last clause of the proviso. And this, instead of limiting the power of eminent domain granted to utility districts by chapter 1, Laws of 1931, shields them from the exercise of such power by cities and towns. The 1933 act

pertains solely to cities and towns owning their own electric plants and facilities. It is designed to permit the extension of electric facilities and service by such cities and towns beyond their corporate limits, but circumscribes their power of eminent domain to the extent defined in the proviso. To apply the provisions of that act to utility districts, which derive their powers from a distinct and comprehensive code (chapter 1, Laws 1931), would extend the doctrine of implied repeal in a measure unprecedented.

The only limitation on the power of eminent domain by utility districts is to be found in the act which granted the power, namely, § 6 (b), chapter 1, Laws of 1931, as follows: "Provided, That no public utility owned by a *city or town* shall be condemned hereunder . . ." It is of interest to note that this limitation is complementary to the limitation contained in the last clause of the proviso to § 3, chapter 51, Laws of 1933. Of course, it is not suggested that the proviso just quoted from the act of 1931 has any bearing on the proceedings in this case. For the plants and facilities sought to be condemned are not owned by South Bend or Raymond.

The order of necessity and public use is affirmed.

STEINERT, C. J., SIMPSON, GERAGHTY, and ROBINSON, JJ., concur.