[Nos. 28219, 28220. Department Two. March 25, 1941.]

THE STATE OF WASHINGTON, *on the Relation of The Washington Water Power Company et al., Plaintiff,*
v. THE SUPERIOR COURT FOR GRANT COUNTY,
*E. W. Schwellenbach, Judge, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of The Washington Water Power Company et al., Plaintiff,*
v. THE SUPERIOR COURT FOR DOUGLAS COUNTY,
*E. W. Schwellenbach, Judge, Respondent.*[1]

[1] Reported in 111 P. (2d) 577.

*Post, Russell, Davis & Paine* and *H. E. T. Herman,* for relators.

*Houghton, Cluck & Coughlin* and *E. K. Murray,* for respondents.

SIMPSON, J.—This proceeding is by way of writs of certiorari to review the actions of the superior courts of Grant and Douglas counties in eminent domain proceedings.

December 20, 1939, public utility district No. 2 of Grant county instituted eminent domain proceedings for the purpose of condemning plants, lines, and facilities used for the distribution of electric current, these being the property of The Washington Water Power Company. The property was situated in Grant county, with certain distribution lines extending into Douglas and Lincoln counties.

December 21, 1939, public utility district No. 1 of Douglas county instituted eminent domain proceedings for the purpose of condemning like property owned by the company and located in Douglas county.

Demurrers were interposed by respondents in each action. Applications for orders of public use and necessity were brought on for hearing, and by agreement of court and counsel the causes were consolidated for hearing upon the demurrers and for trial. After the trials were concluded, the court overruled the demurrers and entered orders of public use and necessity in each case. Thereafter, the owners of the property applied to this court for a writ of review, which was issued September 11, 1940.

We will refer to the company as relator and to the districts as respondents.

The principal question raised in each of the eminent domain proceedings is the same, and the cases have been consolidated for our consideration.

The facts necessary to a determination of these cases are as follows: The Washington Water Power Company is a large concern engaged in generating electric energy and distributing it in many places throughout eastern Washington. It owns, as a part of the system, plants, transmission lines, and distribution lines in Grant, Douglas and Lincoln counties.

The commissioners of the public utility districts in the counties of Grant and Douglas decided to acquire the properties of the relator for the purpose of distributing electric energy, and to that end passed appropriate resolutions seeking to condemn the properties, including certain franchises owned by the company. The franchises sought to be condemned are nonexclusive franchises held by the company, giving it the right to construct and maintain transmission and distribution lines along and upon the public highways, roads, and city streets within the two counties.

Two questions are presented in this proceeding: (1) Do the resolutions of the two districts comply with the statutory provisions contained in Rem. Rev. Stat., § 11611 [P. C. § 4498-17]? (2) Does the public utility district have the right to condemn nonexclusive franchises owned by a private public utility corporation, permitting the company to construct and maintain transmission and distribution lines over, along, and upon the public highways, roads, and city streets within the territorial limits of the public utility district?

We will discuss the sufficiency of the resolution first. The public utility districts concerned in this litigation were formed, and have sought to function, as active organizations under and by virtue of our water power utility district act, Initiative to the Legislature No. 1, passed by the people November 4, 1930, chapter 1, Laws of 1931, p. 3, Rem. Rev. Stat., §§ 11605-11616 [P. C. §§ 4498-11 to 4498-22], which sets out in detail the rules governing the formation of districts and the manner in which their elected commissioners may proceed to acquire the property of privately owned public utilities.

The attacked portions of the resolutions passed by the commissioners of each district are essentially the same, and read as follows:

"D. For the purpose of converting the foregoing works, plants and facilities into an efficient and economical electric system, and of severing the same from the remaining works, plants and facilities of said company where necessary, the District shall construct and install any and all necessary and convenient lines and equipment, and acquire any and all necessary lands, franchises, easements, permits, rights of way and other rights and privileges therefor.

"E. The District at its election shall make and enter into a contract or contracts for the purchase by the District of electricity at wholesale with said company and/or such other private and public corporations, agencies and persons as may have the same available for sale."

Relator contends that the resolutions are deficient in that they do not indicate the source from which the electricity will be purchased and the place where it will be brought to the system sought to be acquired.

Section 7 of the act, p. 22, Rem. Rev. Stat., § 11611 [P. C. § 4498-17], provides:

"Whenever the commission shall deem it advisable that the public utility district purchase, purchase and condemn, acquire, or construct any such public utility, or make any additions or betterments thereto, or extensions thereof, the commission shall provide therefor by resolution, which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be, . . ."

Section 11 of the act, p. 29, Rem. Rev. Stat., § 11615 [P. C. § 4498-21], provides:

"The rule of strict construction shall have no application to this act, but the same shall be liberally construed, in order to carry out the purposes and objects for which this act is intended."

█ The standard to be followed in ascertaining whether a plan or system resolution is sufficiently definite to meet the requirements of the statute is that the plan or resolution shall contain a "reasonably accurate description" of the property to be taken.

This question was before the court in *Langdon v. Walla Walla,* 112 Wash. 446, 193 Pac. 1, and in discussing it we stated:

"Some contention is made in appellants' behalf that the proposition was not properly submitted to the voters, because 'no sufficient plan or system is set forth therein as required by law.' The only requirement of the statute in this regard, § 8006, Rem. Code, is that the 'corporate authorities shall provide therefor by ordinance which shall specify and adopt the system or plan proposed, and declare the estimated cost thereof as near as may be.' We think it is contemplated by the statute that the system and plan proposed need be specified only in such general terms as will fairly inform the voters of the general nature and extent of the proposed improvements, and that this ordinance sufficiently does so by the specification of the system and plan as summarized near the beginning of this opinion. Our decisions in *Seymour v. Tacoma,* 6 Wash. 138, 132 Pac. 1077, and *Paine v. Port of Seattle,* 70 Wash. 294, 126 Pac. 628, 127 Pac. 580, support this conclusion."

It will be noted that the direction to the city council contained in the statute interpreted in that case relative to specifying the system or plan proposed is worded the same as the direction in the water power utility district act.

Again, in *State ex rel. Willapa Electric Co. v. Superior Court,* 196 Wash. 523, 83 P. (2d) 742, we determined that property sought to be condemned should be described with "reasonable certainty." It is not necessary that the public utility district outline in definite detail

the entire plan of operation by which it proposes to conduct the business of the system acquired. *Matthews v. Ellensburg,* 73 Wash. 272, 131 Pac. 839. To do so would, in many cases, be impractical, and in others impossible. All that is necessary is that the general plant or system be specified and described with reasonable certainty.

The case of *Matthews v. Ellensburg, supra,* has an important bearing upon the problem before us. In that case, we recognized that the matter of securing a supply of water and the acquisition of the distribution system might be covered in separate and distinct plan and system resolutions. The city in that case had adopted a plan and system ordinance which provided for the digging of wells and the obtaining therefrom a source of water supply. The city did not at that time own any water distribution system, and no provision was made for its acquisition or construction. The contention was made that this situation rendered the ordinance defective for uncertainty. This court, in deciding that question, stated:

"It is true the ordinance which adopted the supply system also stated that it was further proposed that a supply plant would be connected with a distributing system located within the limits of the city, which is to be constructed by said city by local assessment upon the property specially benefited thereby. But that clause in the ordinance was for the information of the voters and was not necessary to the validity of the supply system which was provided for. The supply system was to be a completed system within itself for that purpose, and the distributing system was to be provided for in another method entirely consistent with the powers and duties of the city."

Accord, *Seymour v. Tacoma,* 6 Wash. 138, 32 Pac. 1077, and *Puget Sound Power & Light Co. v. Puyallup,* 51 F. (2d) 688.

The securing of electric energy is an operating problem entirely disconnected with the plan of securing the distribution properties belonging to the relator. Counsel for relator argue, and there is much force to their argument, that it will be difficult to ascertain severance damages unless the source of electric supply is first determined.

It is true that the question of severance damages could be better ascertained if the resolution named some agency other than relator as a source of supply. On the other hand, if relator had been named as the source of supply, that fact would not necessarily result in any definite benefit for either party, for the reason that the district could not be bound to accept the electric energy from relator for an indefinite period of time. The possibility that the public utility district might purchase its power from relator should simply be an element to be considered in determining what its damages should be.

Relator contends that, as to property owners, the statute should be strictly construed, and cite as authority *Chehalis v. Centralia,* 77 Wash. 673, 138 Pac. 293. That general rule has no application, because of the fact that the water power utility district act [Rem. Rev. Stat., § 11615] states that it shall be liberally construed. That construction should and does apply to all provisions of the act, including a direction to the commissioners relative to the formation of plans to appropriate property. This does not in any way vary the rule that just compensation must be paid for the property taken. A strict construction of the statute would not lead us to a conclusion other than that the property should be described with reasonable certainty.

The property owned by relator and sought to be

taken by petitioners was so described in the resolution passed by the commissioners, and the owners of the property were fully advised as to which of their properties the districts were determined to take.

Relator's second contention is that Rem. Rev. Stat., § 11610 [P. C. § 4498-16], subd. (e), gives to public utility districts the right to construct their lines upon and along the highways, roads, and streets within their districts without securing franchises from other municipalities. In other words, relator contends that the districts have franchises given to them by the provisions of the act and therefore do not have any need for the franchises held by relator.

There would be much force to that argument if the public utility districts had general franchises or a general right to occupy highways, roads, and streets for the purposes of carrying on the business delegated to them by statute. However, we are unable to hold that the act gives to the districts such general franchises or rights.

Subdivision (e) of Rem. Rev. Stat., §11610, provides:

"And for the purposes aforesaid, it shall be lawful for any public utility district so organized to take, condemn and purchase, purchase, and acquire any and all public, and private property, franchises and property rights, including state, county, and school lands, and property and littoral and water rights, for any of the purposes aforesaid, and for railroads, tunnels, pipe lines, aqueducts, transmission lines, and any and all other facilities necessary or convenient, . . . Such public utility district shall have power to build and maintain inter-tie lines connecting its power plant and distribution system with the power plant and distribution system owned by any other public utility district, or municipal corporation, or to connect with the power

plants and distribution systems owned by any municipal corporation in the district, and from any such inter-tie line to sell electric energy to any individual, or public utility district, or any city or town, or other corporations, public or private, and, by means of transmission or pole lines, to conduct electric energy from the place of production to the point of distribution, *and to construct and lay said aqueducts, pipe or pole lines, and transmission lines along and upon public highways, roads and streets,* and to condemn and purchase, purchase or acquire, lands, franchises and rights of way necessary for the same." (Italics ours.)

The italicized portion of the above quotation is the only portion of the act in which is found any reference to the right of public utility districts to occupy any portions of roads, highways, or streets. Those words are to be found only in the one sentence, which is devoted to inter-tie lines, and have no reference to any other portion of the act. Assuming, without deciding, that the italicized portion does grant a franchise, still it seems to us that the words to which we have just referred must apply to inter-tie lines only, and not to the systems as a whole.

The right of the districts to secure the franchises of relators by eminent domain proceedings under ordinary circumstances, cannot well be questioned. The act specifically gives the districts that right, which conforms to the provisions of Art. XII, §10, of our state constitution, reading:

"The exercise of the right of eminent domain shall never be so abridged or construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use the same as the property of individuals."

A municipal corporation may be given the right by the legislature to condemn and take the property of a privately owned public utility corporation already de-

voted to the same public use, for the reason that the use of the public utility by a municipal corporation is larger in scope and of more general benefit to the public. *Tacoma v. Nisqually Power Co.*, 57 Wash. 420, 107 Pac. 199; *State ex rel. Peabody v. Superior Court*, 77 Wash. 593, 138 Pac. 277; *State ex rel. Willapa Electric Co. v. Superior Court*, 196 Wash. 523, 83 P. (2d) 742.

■ Was it necessary for respondents to take relator's franchises in order to carry on the business for which each district was organized, that of furnishing electric energy to the general public?

The question of the necessity for the taking of relator's property was for the determination of the district commissioners, and with that determination we can have no concern unless it be shown that the commissioners were guilty of fraud or acted arbitrarily and capriciously. *State ex rel. Bremerton Bridge Co. v. Superior Court*, 194 Wash. 7, 76 P. (2d) 990. In the case at bar, there can be no doubt but that there was sufficient necessity for taking the franchises so as to preclude our finding that there was arbitrary, capricious, or fraudulent action on the part of the commissioners. Without the franchises they would have no right to use and maintain the lines which they were taking.

■ In connection with the question of whether or not these franchises were sought for a public use, our attention has been called to the provisions of amendment IX of our state constitution, in which we find that,

"Whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public."

The very nature of the business of furnishing electric energy determines that the use to which the condemned property is to be put is a public one. Under our present way of living, electricity is essentially necessary in order to enable our citizens to carry on their every day activities and pursue their accustomed manner of living. *State ex rel. Chelan Electric Co. v. Superior Court,* 142 Wash. 270, 253 Pac. 115, 58 A. L. R. 779; *Brady v. Tacoma,* 145 Wash. 351, 259 Pac. 1089; *McCullough v. Interstate Power & Light Co.,* 163 Wash. 147, 300 Pac. 165; *State ex rel. Willapa Electric Co. v. Superior Court, supra.*

The judgments of the trial court are correct, and its orders of public use and necessity are affirmed.

ROBINSON, C. J., BEALS, and MILLARD, JJ., concur.

JEFFERS, J. (concurring)—I am in full accord with the result reached by the majority opinion, but I am unable to fully agree with what is said in the opinion concerning the interpretation of Rem. Rev. Stat., § 11610.

It is true that only in subd. (e) is any express mention made of the right of public utility districts to occupy public highways, roads, and streets. But I think it is fairly arguable that the right of such occupancy must be necessarily implied from the general powers conferred upon public utility districts by subds. (b) and (d) of the section. Such right of occupancy is, however, subject to the right of the owner, and must be perfected by purchase, condemnation and purchase, franchise, or otherwise, as is provided for in subd. (b). It is to effectuate this and other rights granted that the power of eminent domain is conferred upon public utility districts by subd. (b).

It rather clearly appears that, unless subd. (e) grants general rights of way to public utility districts, no such grant is made in the act.

The pertinent portion of subd. (e) is set out in the majority opinion, and therefore will not be quoted herein.

What I have heretofore stated concerning the provisions of subds. (b) and (d) apply fully to the first sentence of subd. (e), quoted in the majority opinion— no rights of way are thereby granted, the public utility district being empowered only to acquire such rights of way.

The second quoted sentence was interpreted in the majority opinion as referring only to inter-tie lines, and it was therefore held that, even though that sentence does grant a franchise or right of way, such grant is limited to a right of way for inter-tie lines only, and is not a general grant of rights of way for the system as a whole. It seems to me that this sentence is not exclusively concerned with inter-tie lines, but rather is concerned with the whole network of lines by which electric energy is transmitted from its source to the point of distribution. But it also appears that nothing said in this sentence can be construed as a grant, either of general or special rights of way. That part of the sentence which deals exclusively with inter-tie lines reads:

"Such public utility district shall have power to build and maintain inter-tie lines connecting its power plant and distribution system with the power plant and distribution system owned by any other public utility district, or municipal corporation, or to connect with the power plants and distribution systems owned by any municipal corporation in the district, and from any such inter-tie line to sell electric energy to any individual, or public utility district, or any city or town, or other corporations, public or private  .  .  ."

The phrase "inter-tie lines" is in effect defined therein as those "lines connecting its power plant and distribution system with" some other power plant and distribution system.

The next clause reads:

". . . and, by means of transmission or pole lines, to conduct electric energy from the place of production to the point of distribution . . ."

Here the phrase "transmission or pole lines" is used, rather than the expression "inter-tie lines"; the energy is conducted, not to the power plant and distribution system, but "to the point of distribution"; it is conducted from the place of production.

With these two clauses in mind, it is my opinion that this sentence concerns the entire system of transmitting electricity, including the inter-tie lines, the transmission lines, and the distribution lines.

The next clause reads:

". . . and to construct and lay said aqueducts, pipe or pole lines, and transmission lines along and upon public highways, roads and streets . . ."

and the following clause reads:

". . . and to condemn and purchase, purchase or acquire, lands, franchises and rights of way necessary for the same."

It appears to me that any contention that, by the first of these last two clauses, rights of way are granted to public utility districts along public highways, roads, and streets, is completely overcome by the import of the clause immediately following, which empowers public utility districts to condemn and purchase, purchase or acquire, rights of way *necessary* for the same. By this last statement, it is expressly recognized that public utility districts must receive rights of way or

franchises from the owners of public highways, roads, and streets, over and upon which they desire to extend their lines.

It therefore seems to me that the decision on this issue should be based on the premise that no franchises or rights of way are granted either by subd. (e) or any other section of the act, rather than on the premise that the rest of the act is silent as to specific mention of highways, roads, and streets, and that subd. (e) is of limited application to inter-tie lines only.

[1]Reported in 111 P. (2d) 583.